**FILED
CLERK**

3:48 pm, Aug 08, 2019

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CARSON OPTICAL, INC.,

                        Plaintiff,

     -against-

ALISTA CORPORATION, NASR AMR,
RQ INNOVASION INC. and BRENDAN ZHENG,

                        Defendants.
-----------------------------------------------------------------X

**OPINION AND ORDER**
19-cv-1725 (SJF)(AKT)

FEUERSTEIN, United States District Judge

       On March 26, 2019, plaintiff Carson Optical, Inc. ("plaintiff" or "Carson") commenced this action against defendants Alista Corporation ("Alista"), Nasr Amr ("Amr"), RQ Innovasion Inc. ("RQ") and Brendan Zheng ("Zheng") (collectively, "defendants"), alleging, *inter alia*, false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Presently before the Court are plaintiff's applications, *inter alia*, (i) for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining and restraining defendants from falsely advertising the magnifying power of certain cosmetic mirror products; (ii) for leave to file an amended complaint pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure; and (iii) for leave to conduct expedited discovery. For the reasons set forth herein, plaintiff's application for leave to file an amended complaint is granted and its applications for a preliminary injunction and for leave to conduct expedited discovery are denied.

1

I. BACKGROUND

A. Factual Background

Carson was founded in 1990 and markets and sells "optical products" nationwide, (Complaint ["Compl."], ¶¶ 2, 17; Declaration of Richard Cameron ["Cameron Decl."], ¶¶ 1-2), including three (3) products that have a magnifying mirror which it sells on www.Amazon.com: "(1) The MI-10, Folding Compact Lighted Mirror, (2) The MI-20, Round Lighted Mirror with Suction Cup Base, and (3) The MI-30, Square Lighted Mirror with Stand." (Compl., ¶ 20; Cameron Decl., ¶¶ 4-5, 8 and Ex. A-C). According to Zheng, who is a shareholder and director of RQ, (Declaration of Brendan Zheng ["Zheng Decl."], ¶ 1), "[a]t no point prior to February 2019 did Carson even advertise a cosmetic makeup mirror." (*Id.*, ¶ 19 and Ex. A).

RQ, doing business as Fancii®, is a Canadian corporation which, *inter alia*, markets and sells beauty products online, including the following ten (10) magnifying mirrors: the Fancii® LED 7X Lighted Magnifying Makeup Mirror, the Fancii® 10X Magnifying Lighted Makeup Mirror, the Fancii® LED Lighted Travel Makeup Mirror, the Fancii® Daylight LED 10X Magnifying Makeup Mirror, the Fancii® LED Lighted Large Vanity Makeup Mirror, the Fancii® Lumi S LED Compact Mirror, the Fancii® Lumi S LED Compact Mirror, the Fancii® Lumi-Lighted Compact Mirror, the Fancii® Maya Lighted Magnifying Mirror and the Fancii® Tria Trifold Vanity Mirror. (Compl., ¶¶ 5, 13-14, 23-24; Cameron Decl., ¶¶ 7, 9; Zheng Decl., ¶¶ 5, 7, 15). Zheng "owns, directs and/or controls" RQ.[1] (Compl., ¶¶ 6, 13, 23; *see also* Zheng Decl., ¶ 1 [averring that that Zheng is a shareholder and a director of RQ and, "as such, ha[s]

---

[1] Cameron's assertion that "it appears that Zheng has also authorized Alista's sale of Fancii® products[,]" (Cameron Decl., ¶ 10), is clearly not based on his personal knowledge and, therefore, is not given any weight. Nonetheless, Zheng asserts that Alista "is a distributor and reseller that has sold some RQ products, including some of RQ's FANCII®-branded beauty products and magnifying cosmetic mirrors." (Zheng Decl., ¶ 8).

authority to discuss RQ's business."]). According to Zheng, "neither Carson nor RQ manufacture their . . . magnification cosmetic mirror themselves, rather they both purchase magnifying products from factories overseas—mostly in China—and brand them as their own for sale at wholesale (Carson) or direct-to-consumers (RQ)." (Zheng Decl., ¶ 24).

Plaintiff alleges that RQ and Zheng (collectively, the "RQ Defendants"), "[u]tilizing the www.fancii.com website," falsely advertised the ten (10) above-referenced Fancii®-branded magnified mirror products "with magnifying powers that are grossly overstated." (Compl., ¶¶ 14-15). However, plaintiff does not indicate how plaintiff is harmed by the RQ Defendants' advertisements or representations on the www.fancii.com website.[2] Nonetheless, Zheng concedes that RQ predominantly "sell[s] mirrors and . . . advertises on Amazon." (Zheng Decl., ¶¶ 74, 94; *see also Id.*, ¶¶ 73, 81-83, 86, 88-89, 91-92). According to Zheng, "RQ received the magnification listed on its mirror products directly from its glass suppliers[,] . . . simply uses the magnification given to it by its manufacturers and/or displayed in catalogs produced by the glass supplier for its manufacturer[,] . . . [and] had no input on the magnification listed." (Zheng Decl., ¶¶ 26-27, 41).

Alista is also a Canadian company which, *inter alia*, markets and sells magnifying mirrors on www.Amazon.com, including the same ten (10) Fancii®-branded magnifying mirrors as the RQ Defendants. (Compl., ¶¶ 3, 10-11, 23; Cameron Decl., ¶¶ 6, 8; Zheng Decl., ¶ 8). Amr "owns, directs and/or controls" Alista. (Compl., ¶¶ 4, 10, 23). Plaintiff alleges that Alista and Amr (collectively, the "Alista Defendants"), "[u]tilizing the Amazon marketplace," falsely advertised those ten (10) products "with grossly overstated magnifying powers." (*Id.*, ¶¶ 10-12; Cameron Decl., ¶ 14; Certification of Eugene Hecht ["Hecht Cert."]). According to Richard

---

[2] Accordingly, plaintiff's assertions about the alleged misrepresentations in RQ's website, (*see* Compl., ¶ 29; Cameron Decl., ¶¶ 20-24), are not relevant to the determination of this motion.

Cameron ("Cameron"), plaintiff's president, plaintiff is harmed by the overstated magnifying powers in those advertisements on Amazon because: (i) when the advertisements "are positioned on the product pages of Carson's magnifying mirror products on www.Amazon.com[,] . . . consumers are presented with the false [sic] choice of buying Carson's product or buying the Fancii® falsely advertised product[,]" (Cameron Decl., ¶ 15; *see also id.*, Ex. D); and (ii) they "falsely cause Carson's products to appear technically inferior and over-priced, when compared to Fancii's products." (*Id.*, ¶ 17). Plaintiff also alleges that "defendants' prevalent use of false advertising provide them an unfair competitive advantage over Carson by marketing magnifying mirrors that do not meet their advertised magnifying power." (Compl., ¶ 21).

B. Procedural History

On March 26, 2019, plaintiff commenced this action against defendants alleging, *inter alia*, false advertising in violation of Section 43(a)(1)(B) of the Lanham Act[3], 15 U.S.C. § 1125(a)(1)(B), and seeking injunctive relief; damages, including disgorgement of defendants' "wrongfully gained profits;" and costs and attorney's fees. (Compl., ¶¶ 22-36).

Plaintiff now moves, *inter alia*, (i) for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining and restraining defendants from falsely advertising the magnifying power of the ten (10) Fancii®-branded magnified mirror products at issue herein;

---

[3] Section 43(a)(1)(B) of the Lanham Act imposes liability upon "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). "To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff[,]" *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016)[,] "either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014).

(ii) for leave to file an amended complaint pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure to add "Creatorstudio" as an additional defendant, (*see* Proposed "First Supplemental Complaint" ["Am. Compl.,"], ¶ 7), and the following additional allegations: (a) that "[a]fter the initiation of this lawsuit, . . . the seller of the falsely advertised Fancii magnifying mirrors in the Amazon marketplace was caused to be changed from Alista to Creatorstudio[,]" (*id.*, ¶ 17), (b) that, "[u]pon information and belief, this change in the seller of the falsely advertised 'Fancii' magnifying mirrors in the Amazon marketplace was made to frustrate and avoid an impending order from the Court preliminarily enjoining the continued false advertising of the Fancii magnifying mirrors in the Amazon marketplace[,]" (*id.*, ¶ 18), and (c) that Creatorstudio, like the Alista Defendants and RQ Defendants, "advertise[s] and sell[s] a line of Fancii® magnifying mirrors[,]" (*id.*, ¶ 26), and "consistently and systematically overstate[s] the magnifying power of the Fancii® products[,]" (*id.*, ¶ 27); and (iii) for leave to conduct expedited discovery and, specifically, to serve up to two (2) interrogatories and up to five (5) requests for production "for the purpose of identifying the person or entity known as Creatorstudio . . . and learning the relationship between Creatorstudio and the Defendants."

## II. DISCUSSION

### A. Standard of Review

"A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152–53 (2d Cir. 2007); *accord North American Soccer League,*

5

*LLC v. United States Soccer Fed'n, Inc. ("NASL")*, 883 F.3d 32, 37 (2d Cir. 2018). In addition, the movant must show that "a preliminary injunction is in the public interest[,]" *NASL*, 883 F.3d at 37; *accord Friends of the E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 143 (2d Cir. 2016); and "that the balance of equities tips in his favor." *Benisek v. Lamone*, --- U.S. ---, 138 S. Ct. 1942, 1944, 201 L. Ed. 2d 398 (2018); *see also American Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) ("A preliminary injunction is an equitable remedy and an act of discretion by the court. A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest.") "[A] preliminary injunction is 'an extraordinary remedy never awarded as of right[,]'" *Benisek*, --- U.S. ---, 138 S. Ct. at 1943 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)), and "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (emphasis in original)).

B.  Irreparable Injury

Since "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction[,] . . . the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (quotations and citations omitted); *see also JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. Oct. 26, 2015) (summary order) (holding that since irreparable harm "is the *sine qua non* for preliminary

injunctive relief[,] . . . the moving party must first demonstrate that irreparable harm would be 'likely' in the absence of a preliminary injunction before the other requirements for the issuance of a preliminary injunction will be considered." (quotations and citations omitted)). "Irreparable harm is defined as certain and imminent harm for which a monetary award does not adequately compensate[,] . . . [and] exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. Jan. 27, 2017) (summary order) (quotations and citations omitted); *see also WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (holding that irreparable harm is "harm to the plaintiff's legal interests that could not be remedied after a final adjudication.") "Harm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss." *WPIX*, 691 F.3d at 285. Thus, unless the movant demonstrates "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages[,] . . . a motion for a preliminary injunction should be denied." *Rodriguez*, 175 F.3d at 234 (quotations and citation omitted); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) (holding that before a court may grant injunctive relief, the plaintiff must demonstrate, *inter alia*, "that remedies available at law, such as monetary damages, are inadequate to compensate for [its] injury."); *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("[T]o satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. . . . Where there is an adequate remedy at law, such as an award of money damages,

injunctions are unavailable except in extraordinary circumstances." (quotations, alterations and citations omitted)). "[I]f a party fails to show irreparable harm, a court need not even address the remaining elements of the [preliminary injunction standard]." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019).

Plaintiff has not sufficiently demonstrated a likelihood of irreparable harm absent a preliminary injunction. Plaintiff's argument that it will be irreparably harmed absent a preliminary injunction is primarily based upon the presumption of injury set forth in the *Merck* case. (*See* Plf. Mem. at 7). However, in that case, the Second Court affirmed the district court's use of legal presumptions to impose Lanham Act liability upon the defendant following a bench trial, holding that when "the parties operate in the context of a two-player market and literal falsity and deliberate deception have been proved, it is appropriate to utilize legal presumptions of consumer confusion and injury *for the purposes of finding liability* in a false advertising case brought under the Lanham Act."[4] *Merck*, 760 F.3d at 251 (emphasis added); *see also Time Warner*, 497 F.3d at 162 (applying the presumption of injury in the context of a two-player, or "nearly binary," market in which the parties were "obvious competitors").

However, following the Supreme Court's decision in *eBay*, the Second Circuit has held that in considering whether the plaintiff sufficiently demonstrated a likelihood of irreparable harm, "the court must not adopt a 'categorical' or 'general' rule *or presume that the plaintiff will suffer irreparable harm* (unless such a 'departure from the long tradition of equity practice' was

---

[4] Although plaintiff cites *Merck* for the proposition that "irreparable harm will be presumed" in cases involving "a misleading comparison to a specific competing product," (Plf. Mem. at 7), that language is actually set forth in *McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988), which analogized such false comparative advertising cases to a Lanham Act trademark dispute, and was merely discussed in *Merck* as part of the Court's "brief overview of [its] jurisprudence on comparative advertising cases." *Merck*, 760 F.3d at 259 (quoting *McNeilab*, 848 F.2d at 38). *Merck* did not actually involve injunctive relief pursuant to Fed. R. Civ. P. 65 and, thus, did not address the element of a likelihood of irreparable harm, or the use of a presumption of injury with respect thereto.

8

intended by Congress)."[5] *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (emphasis added) (quoting *eBay*, 547 U.S. at 391, 393-94, 126 S. Ct. 1837). "Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Id.* (quoting *eBay*, 547 U.S. at 391, 126 S. Ct. 1837); *accord WPIX*, 691 F.3d at 285. In other words, "[a]fter *eBay*, . . . courts must not simply presume irreparable harm. . . . Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause [a likelihood of] irreparable harm." *Salinger*, 607 F.3d at 82; *see also Silberstein v. Aetna, Inc.*, No. 13-cv-8759, 2014 WL 1388790, at *3 (S.D.N.Y. Apr. 9, 2014) ("[U]nder *eBay* and *Salinger*, Plaintiff cannot rely on a presumption of irreparable harm flowing from the violations that he alleges-he must make a separate showing of irreparable harm. Pre-*eBay* cases suggesting the contrary are not good law."); *Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 660 (S.D.N.Y. 2013) ("To apply a different test [than *eBay*] or presumption of entitlement to an injunction would be a major departure from the long tradition of equity practice that should not

---

[5] Although *Salinger* involved a Lanham Act copyright case, the Second Circuit found that "*eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context." *Salinger*, 607 F.3d at 78. The Court also indicated that although it was "not called upon to extend *eBay* beyond the context of copyright cases, [it saw] no reason that *eBay* would not apply with equal force to an injunction in *any* type of case." *Salinger*, 607 F.3d at 78, n. 7 (emphasis in original). In addition, the Second Circuit found that although *Time Warner* was decided after *eBay*, that case was not "binding precedent" with respect to the preliminary injunction standard because it "applied the pre-*eBay* standard . . . [b]ut whether *eBay* affected that standard was neither raised by the parties nor discussed by either the district court or this Court on appeal." *Salinger*, 607 F.3d at 80, n. 6. Similarly, in determining whether it was appropriate to presume injury to the plaintiff in *Merck* for the purposes of finding liability in a false advertising case under the Lanham Act following a bench trial, the Second Circuit discussed "a brief overview of [the] Court's jurisprudence on comparative advertising cases[,]" *Merck*, 760 F.3d at 251, 259, but did not consider the effect of either *eBay* or *Salinger* upon that standard, as the case did not involve a preliminary or permanent injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Nonetheless, although general historical practices in comparative advertising cases do not necessarily entitle plaintiff to injunctive relief based upon a presumption of injury, they may be "helpful and instructive" in discerning and applying the *eBay* standard for granting injunctive relief "when the circumstances of a case bear substantial parallels to litigation the courts have confronted before." *Salinger*, 607 F.3d at 82 (quoting *eBay*, 547 U.S. at 395, 126 S. Ct. 1837 (Kennedy, J., concurring)).

be lightly implied. . . . [The Lanham Act's] grant of authority to issue injunctive relief [in false advertising cases] contains no indication that any other standard should be employed and, to the contrary, expressly incorporates 'the principles of equity.' 15 U.S.C. § 1116(a). . . . Accordingly, the Court finds that the test articulated in *eBay* applies here for an injunction against false advertising. . . ." (quotations, alterations and citations omitted)).

Plaintiff has not demonstrated that it would likely suffer irreparable harm in the absence of a preliminary injunction. Although generally, "the most difficult element to demonstrate when seeking an injunction against false advertising is the likelihood that one will suffer irreparable harm if the injunction does not issue[,]" because "[i]t is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement[,]" *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316-17 (2d Cir. 1982), *abrogated on other grounds by* Fed. R. Civ. P. 52(a), that is not true in this case. The specific harm alleged by plaintiff is that by positioning defendants' challenged advertisements allegedly overstating the magnifying power of their Fancii®-branded magnifying mirror products upon the web pages of Carson's competing magnifying mirror products on www.Amazon.com, consumers are presented with the choice of buying either defendants' purportedly misrepresented product or Carson's product, which, according to plaintiff, "appear[s] technically inferior and over-priced" in comparison. (*See* Cameron Decl., ¶¶ 15, 17 and Ex. D). Even assuming, *arguendo*, that there is no means of tracking "the precise number of customers" within the Amazon marketplace who ultimately elected to buy defendants' product over plaintiff's product "after being confronted with the false Fancii® advertising on Carson's product pages[,]" (*id.*, ¶ 19), when a consumer clicks on one of defendants' challenged advertisements appearing on the website listing plaintiff's product, they are then redirected to the

10

linked website listing defendants' advertised product, and Amazon apparently does track at least the number of clicks that originated therefrom, *i.e.*, the number of clicks on the challenged advertisements that redirected a consumer from plaintiff's product to defendants' advertised product. (*See* Zheng Decl., ¶ 90). Since the maximum number of consumers who were lured to defendants' Fancii®-branded products by clicking on the challenged advertisements is readily ascertainable, plaintiff's losses are measurable and can be sufficiently remedied by an award of monetary damages. Thus, the circumstances of this case are considerably different, and do not "bear substantial parallels," to the cases involving false comparative advertising claims under the Lanham Act upon which plaintiff relies. (*see* Plf. Mem. at 7-8; Plf. Reply at 7). Accordingly, those cases are not "helpful" or "instructive" in discerning and applying the *eBay* standard for granting injunctive relief in this case. *Salinger*, 607 F.3d at 82 (quoting *eBay*, 547 U.S. at 395, 126 S. Ct. 1837 (Kennedy, J., concurring)).

Plaintiff's conclusory assertions, *inter alia*, that the challenged advertisements will irreparably harm its goodwill and the value of its products in the minds of the consumer, without more, are insufficient to satisfy its burden of showing that irreparable harm would be likely in the absence of a preliminary injunction. *See, e.g. Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 486 (W.D.N.Y. 2018) ("In failing to supply evidence of the loss of reputation or good will beyond his own conclusory averments, Plaintiff has not made a sufficient showing that irreparable harm is likely. . . ."); *CSI Entm't, Inc. v. Anthem Media Grp., Inc.*, No. 15-cv-3508, 2016 WL 11263667, at * 7-8 (E.D.N.Y. Dec. 30, 2016), *report and recommendation adopted*, 2017 WL 2778466 (E.D.N.Y. June 27, 2017) (finding that the plaintiff's conclusory statements of loss of reputation were insufficient to show irreparable harm); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-cv-3314, 2015 WL 4033019,at *

11 (S.D.N.Y. June 29, 2015) ("[C]onclusory statements of loss of reputation will not justify an irreparable harm finding."); *Worldwide Diamond Trademarks, Ltd. v. Blue Nile, Inc.*, No. 14-cv-3521, 2014 WL 7933941, at * 4-5 (S.D.N.Y. Nov. 6, 2014) ("Where the loss of a product with a sales record will not affect other aspects of a business, a plaintiff can generally prove damages on a basis other than speculation. . . . In general, injury resulting from the loss of goodwill is irreparable only when the very viability of the plaintiff's business, or substantial losses of sales beyond those of the terminated product, have been threatened." (quotations and citations omitted)). "[I]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S. Ct. 365.

Moreover, plaintiff's claim of irreparable injury is weakened by the lack of any apparent causal connection between the advertisements and its own sales position, since Cameron contends that plaintiff only hired its purported expert in the field of optics, Eugene Hecht ("Hecht"), to investigate the accuracy of the magnifying powers represented in the challenged advertisements of its magnified mirror products because, approximately three (3) years ago, it discovered that Fancii®-branded magnifying *glass* products "were being sold with advertising that materially overstated the magnifying power of the products[,]" (Cameron Decl., ¶ 11), and it wanted to know "whether the Fancii® products, which have magnifying *mirrors*, follow the same practice of overstating magnifying power."[6] (*Id.*, ¶ 12) (emphasis added). Moreover, although Hecht's "Certification" was executed on January 15, 2019, plaintiff did not commence

---

[6] On March 8, 2016, plaintiff commenced an action against only the RQ defendants alleging, *inter alia*, that they falsely advertised certain Fancii® magnifying glass products utilizing the eBay and Amazon "internet marketplaces." *Carson Optical, Inc. v. RQ Innovasion Inc.*, No. 2:16-cv-1157-SIL.

12

this action until March 26, 2019, *i.e.*, more than two (2) months after its purported expert concluded his investigation into the accuracy of the advertisements, and did not seek injunctive relief until almost a week later, *i.e.*, on April 1, 2019, further suggesting a lack of irreparable harm. *See Levola v. Fischer*, 403 F. App'x 564, 565 (2d Cir. Dec. 14, 2010) (summary order) (affirming the district court's finding that the plaintiff failed to demonstrate "that he faced an immediate danger of irreparable harm," in light of his delay in seeking injunctive relief); *CSI Entm't*, 2016 WL 11263667, at * 5 ("Because an application for a preliminary injunction now requires a movant to make an actual showing of imminent irreparable injury in the absence of an injunction, delay is an important factor that the Court must consider."); *e.g. Hornig v. Trustees of Columbia Univ. in City of New York*, No. 17-cv-3602, 2018 WL 5800801, at * 7 (S.D.N.Y. Nov. 5, 2018) (holding that the plaintiff's two and a half month delay in seeking injunctive relief undermined a finding of irreparable injury); *Livery Round Table, Inc. v. New York City FHV & Limousine Comm'n*, No. 18-cv-2349, 2018 WL 1890520, at * 9 (S.D.N.Y. Apr. 18, 2018) ("A delay of about three months undercuts a showing of immediate and irreparable injury.") Since plaintiff has not demonstrated a likelihood of irreparable injury absent a preliminary injunction, its motion for a preliminary injunction is denied in its entirety.[7]

C. Leave to Amend

Since, *inter alia*, defendants do not object to plaintiff's proposed amended complaint, and plaintiff may amend its complaint once as a matter of course pursuant to Rule 15(a)(1)(B) of the

---

[7] In light of this determination, plaintiff's application for expedited discovery "so that the Defendants may not subvert any order preliminarily enjoining the continued false advertising of the 'Fancii' magnifying mirrors[,]" (Plaintiff's Memorandum of Law in Support of Motion for Leave to Conduct Expedited Discovery at p. 3), is denied. *See, e.g. Levy v. Young Adult Inst., Inc.*, No. 13-cv-2861, 2015 WL 170442, at * 6-7 (S.D.N.Y. Jan. 13, 2015).

Federal Rules of Civil Procedure, plaintiff's motion for leave to file an amended complaint is granted, *provided* that plaintiff serves and files the proposed amended complaint **by no later than September 9, 2019**, or it will be deemed to have waived its right to amend the complaint.

III.    CONCLUSION

For the reasons set forth above, plaintiff's motion for leave to file an amended complaint pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure is granted, *provided* that plaintiff serves and files the proposed amended complaint **by no later than September 9, 2019**, or it will be deemed to have waived its right to amend the complaint; and plaintiff's applications for a preliminary injunction and for expedited discovery are denied in their entirety.[8]

SO ORDERED.

                                            /s/ *Sandra J. Feuerstein*
                                            Sandra J. Feuerstein
                                            United States District Judge

Dated:  August 8, 2019
           Central Islip, New York

---

[8] In light of this determination, plaintiff's letter motion, dated August 5, 2019, requesting that the Court schedule a status conference to "discuss resolution," and "address any outstanding issues that may facilitate resolution," of its motions, is denied as moot. In any event, an initial pretrial conference is scheduled to be held before this Court on September 5, 2019 at 11:15 a.m. (*See* Notice of Hearing dated March 28, 2019).